IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; CVS HEALTH CORPORATION; WALGREENS BOOTS ALLIANCE, INC.; and WAL-MART STORES, INC.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>TODD HEMBREE, ATTORNEY GENERAL OF THE CHEROKEE NATION, in his official capacity; JUDGE CRYSTAL R. JACKSON, in her official capacity; JUDGE T. LUKE BARTEAUX; and DOE JUDICIAL OFFICERS 1-4;<br><br>　　　　　　　　　　Defendants. | No. 4:17-cv-00323-TCK-FHM |

## DEFENDANT TODD HEMBREE'S MOTION TO DISMISS

Attorney General Todd Hembree ("Defendant") respectfully moves for dismissal of this lawsuit. The judicial proceedings in Cherokee Nation District Court ("the *Cherokee Nation Action*") that underlie this lawsuit have been dismissed. As a result, there is no case or controversy before this Court. Plaintiffs also have not alleged (nor could they) there is a continuing or ongoing violation of federal law by Defendant. Therefore, their lawsuit does not fall into the *Ex Parte Young* exception to tribal sovereign immunity. Accordingly, the Court lacks subject matter jurisdiction over the Plaintiffs' Amended Complaint.

## FACTUAL BACKGROUND

The Cherokee Nation filed a lawsuit against the Plaintiffs in Cherokee Nation District Court on April 20, 2017 related to the Plaintiffs' negligence and nuisance-causing activity in creating an opioid epidemic among citizens of the Cherokee Nation. Dozens of similar lawsuits

1

have since been filed in courts around the country. The Plaintiffs opposed the tribal court action, arguing (among other things) that the Cherokee Nation's jurisdictional area in north eastern Oklahoma does not constitute "Indian country," and that the Plaintiffs' opioid diversion has not sufficiently threatened the health and welfare of Cherokee Nation to create tribal court jurisdiction. Under the procedure of *National Farmer's Union Insurance Co. v. Crow Tribe*, 471 U.S. 845 (1985), Plaintiffs filed a complaint for declaratory judgment and injunctive relief in this Court on June 8, 2017 (ECF No. 2), and moved for a preliminary injunction the same day (ECF No. 13). On January 9, 2018, this Court granted a preliminary injunction (ECF No. 138). The Court noted that the opioid problem in Cherokee Nation is very real, but that the Cherokee Nation would not likely be able to establish the requirements for tribal court jurisdiction over the Plaintiffs under test set forth in *Montana v. United States*, 450 U.S. 544 (1981). The Court allowed Defendants 30 days to respond to the complaint, and 60 days for the parties to submit a joint status report. On January 19, 2018, the Cherokee Nation voluntarily dismissed the tribal court lawsuit and refiled the case in Oklahoma state court. On January 22, 2018, the tribal court entered an order of dismissal without prejudice.

## LEGAL STANDARD

Federal district courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper." *Mills v. State of Kan.*, 994 F. Supp. 1356, 1357 (D. Kan. 1998). "When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed." *Id*. at 1357-58. Anytime a federal court becomes aware it lacks subject-matter jurisdiction over a case, it must dismiss the case. *See Brown v. Buhman*, 822 F.3d 1151, 1167 n.

17 (10th Cir. 2016), *cert. denied,* 137 S. Ct. 828 (2017) (discussing federal courts' independent duty to study potential mootness issues, even if defendant has made no effort to raise them). When a defendant challenges federal court jurisdiction, the court need not accept the plaintiff's allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A court has wide discretion to allow affidavits and other evidence to resolve disputed jurisdictional facts under Rule 12(b)(1). *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987) ("a 12(b)(1) motion is considered a speaking motion and can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion.") (citations and quotations omitted).

Here, the Court lacks subject matter jurisdiction over the Plaintiffs' Amended Complaint for two reasons: (1) there is not a concrete enough "case or controversy" between the parties to satisfy Article III standing; and (2) Defendant is entitled to sovereign immunity.

**ARGUMENT**

**A.     There is no Article III "case or controversy."**

A moot case is non-justiciable and a federal court lacks jurisdiction to entertain it. Article III mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) (quotation omitted). A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). In a case where the plaintiff is seeking only prospective relief (as here), if an event occurs while the case is pending that effectively cures the plaintiff's alleged injury or grievance, the case must be dismissed. *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727–28 (10th Cir. 1997) (citing *Fund for Animals v. Babbitt*, 89 F.3d 128, 133 (2d Cir. 1996)).

Closely related to Article III mootness is the "prudential mootness" arising from doctrines

of remedial discretion. Prudential mootness addresses "not the power to grant relief but the court's discretion in the exercise of that power." *Id*. (quoting *Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980). Even if a controversy may not be moot in the strict Article III sense, it may nevertheless be "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id*. The Tenth Circuit has stated that the doctrine of prudential mootness has particular applicability in cases, such as the one here, when plaintiffs are seeking an injunction against a government entity. *Id*. (citing cases).

Under both Article III and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief. This lawsuit is mooted under either doctrine. The only "case or controversy" presented by the Plaintiffs' complaint was a request for a declaration and injunction effectively foreclosing tribal court litigation of the *Cherokee Nation Action*. According to the Plaintiffs' "jurisdictional" allegations in Paragraph 22 of their federal complaint, the only "federal question" was whether the Cherokee Nation District Court can exercise jurisdiction, stating: "This Court has subject matter jurisdiction over this declaratory judgment action under 28 U.S.C. § 1331 because the existence of tribal jurisdiction over non-members is a federal question." Am. Compl. ¶ 22 (ECF No. 60, June 27, 2017) Moreover, the Plaintiffs' only requested relief under Count I (for declaratory judgment) is:

> a declaratory judgment that: (a) the Judicial Defendants are without jurisdiction to adjudicate the *Cherokee Nation* Action against Plaintiffs; (b) Defendant Hembree lacks the authority to prosecute the *Cherokee Nation* Action against Plaintiffs in Cherokee Nation District Court; and (c) Plaintiffs are not required to exhaust their jurisdictional challenges in Cherokee Nation District Court prior to seeking relief in this Court.

*Id*. ¶ 106. Finally, as relief under Count II for an injunction, the Plaintiffs ask for a preliminary and permanent injunction enjoining "further prosecution or adjudication of the *Cherokee Nation* Action in Cherokee Nation District Court." *Id*. ¶¶ 114-115. The Plaintiffs have achieved what they sought to achieve, and there is certainly no legally-cognizable injury left for this Court to remediate in any real world fashion. The Cherokee Nation District Court dismissed the lawsuit. The Plaintiffs will not be required to exhaust their jurisdictional challenges in tribal court; indeed, they will not be required to appear in tribal court at all in this matter. *See* Declaration of Attorney General Todd Hembree (Exhibit A). The Cherokee Nation has refiled in Oklahoma state court, and intends to proceed to a judgment on the merits there. *Id*. Therefore, the "mootness" doctrine applies.

**B.     The "voluntary cessation" exception to mootness does not apply.**

Because the Plaintiffs' case is clearly moot, the only question is whether the "voluntary cessation" exception to the mootness doctrine applies.[1] When a defendant "voluntarily ceases" its

---

[1] The other exception to mootness—when a case is "capable of repetition but evading review"—is inapplicable. It applies only in "exceptional situations" in which the following two-part test is met: (1) the challenged action is so short in duration that it is likely to always become moot before federal court litigation is completed, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *See generally Pub. Serv. Co. of Colorado v. Shoshone-Bannock Tribes*, 30 F.3d 1203, 1209 (9th Cir. 1994); *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 481 (1990). Most obviously, Plaintiffs cannot establish the first prong. The Tenth Circuit has held that "when a case presents an issue which 'does not have an inherent problem of limited duration,' the case will not necessarily evade review in future litigation, and the exception to the mootness doctrine does not apply." *Disability Law Center v. Millcreek Health Center*, 428 F.3d 992, 997 (10th Cir. 2005) (quoting *Affiliated Ute Citizens of Utah v. Ute Indian Tribe of Uintah & Ouray Reservation*, 22 F.3d 254, 256 n.1 (10th Cir. 1994)). *See also Jordan v. Sosa*, 654 F.3d 1012, 1035–37 (10th Cir. 2011) (holding that the exception did not apply because plaintiff "provides absolutely no evidence from which we might infer that this sort of allegedly unconstitutional behavior is necessarily of short duration"); *State of Nev. v. Hicks*, 944 F. Supp. 1455, 1460 (D. Nev. 1996), *aff'd sub nom. State v. Hicks*, 196 F.3d 1020 (9th Cir. 1999), *rev'd on other grounds*, 533 U.S. 353 (2001) ("A suit brought in tribal court against the State of Nevada and state officials acting in their official capacities does not fall within the 'capable of repetition yet evading review' exception because no likelihood of repeat litigation has been shown and such a suit is not inherently limited in duration such that it is always likely to become moot before federal court litigation is completed.").

objectionable conduct, this does not render a case moot if there is reasonable expectation the defendant will resume the conduct once the federal case is dismissed. *See Troiano v. Supervisor of Elections in Palm Beach County, Fla*., 382 F.3d 1276, 1283 (11th Cir. 2004) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953)). ("The case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.") (internal citation and quotation marks omitted)). Because the Defendant voluntarily terminated the challenged conduct—that is, Attorney General Hembree filed a notice of dismissal in tribal court, and the tribal court entered an order of dismissal—it is the Defendant's "heavy burden" to show that its challenged conduct cannot reasonably be expected to start up again. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000). Despite the "heavy burden" language of *Laidlaw*, the Tenth Circuit has noted that, in practice, the "heavy burden" frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010).[2]

The Tenth Circuit recently held dismissal was appropriate in a case with similar facts,

---

[2] In cases where a *public official* has voluntarily ceased a challenged act or practice, some courts have noted there is "rebuttable presumption" that the case is moot. *Miccosukee Tribe of Indians of Florida v. United States*, 08-23523-CIV, 2010 WL 11506024, at *2 (S.D. Fla. Feb. 25, 2010) ("This exception matures into a rebuttable presumption that the objectionable behavior *will not* occur *if* the alleged perpetrator is *not* a private citizen, but a government actor.") (citing *Troiano*, 382 F.3d at 1283); *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities"); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.").

finding the plaintiff's claims were not justiciable under Article III. In *Bd. of Educ. for Gallup-McKinley County Sch. v. Henderson*, 696 Fed. Appx. 355, 358 (10th Cir. 2017), a school district allegedly terminated Henderson (a member of Navajo Nation) as principal of a high school located within the Navajo Nation. The principal filed a complaint against the school district before the Navajo Nation Labor Commission. The school district moved to dismiss the complaint, which the Commission granted. *Id*. at 356. The principal then appealed the dismissal to the Navajo Nation Supreme Court. The Navajo Nation Supreme Court found it had subject-matter jurisdiction over the dispute but ruled in favor of the school district on the merits. *Id.* Although victorious in the tribal litigation, the school district disagreed Navajo courts had jurisdiction, because the school district was not a member of Navajo Nation. So the school district then filed a lawsuit in federal court, even though no tribal court action was still pending. The school district's federal complaint requested (1) declaratory judgment that the Navajo Nation lacks jurisdiction over the school district's employment decisions, and (2) injunctive relief barring Navajo agencies and courts from prosecuting future claims against the school district. *Id*. at 356-357. The federal district court dismissed the plaintiff's complaint, because the threat of the Navajo Nation exercising jurisdiction over the school district in the future simply was not the kind of concrete and particularized injury necessary for federal subject matter jurisdiction. The Tenth Circuit reviewed the district court's decision *de novo* and affirmed. Analyzing the case under constitutional "case or controversy" principles, the Tenth Circuit found that "[e]ven if Navajo jurisdiction is improper—a question we do not address today—there is no guarantee it will be exercised over the school district in the future." *Id* at 358. The court added that "the 'conjectural' and 'hypothetical' possibility that Navajo courts will assert jurisdiction over the school district in the future cannot give rise to standing. We are thus without power to grant the school district's request for injunctive relief." *Id*. The fact that

7

the school district sought a declaratory judgment in addition to an injunction "does not change this calculus," according to the Tenth Circuit, because the same "case or controversy" requirements apply to declaratory judgment actions. *Id*. The Tenth Circuit concluded that "[t]he school district will suffer no legal or financial penalty from the dismissal of its suit…. [a]nd if the school district thinks it is improperly subjected to Navajo jurisdiction in the future, it can pursue its legal remedies then." *Id*. at 358–59.

Like the plaintiff in *Henderson*, the Plaintiffs here are attempting to challenge the tribal court's jurisdiction over a case that is no longer pending. To the extent the proceedings were to continue in federal court, they would (at most) present only abstract, hypothetical questions about a conjectural injury in the future (and which Plaintiffs have not even alleged in their complaint).[3] At least one federal district court has already relied on the Tenth Circuit's holding in *Henderson* to dismiss a case. Last week in *Charles v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 2018 WL 611469, at *1 (D. Utah Jan. 29, 2018), the federal plaintiff sought to enjoin officials of the Ute Indian Tribe in relation to a lawsuit filed in tribal court. The tribal lawsuit was later dismissed, and the Indian tribe sought dismissal of the federal case because there was no Article III "case or controversy." The federal court agreed, stating that the "Tribal Defendants correctly analogized the present case to *Board of Education for Gallup-McKinley County Schools v. Henderson*, 696 Fed App'x. 355 (10th Cir. 2017). Because [the] case in Ute Court has been

---

[3] This case arguably presents an even a more compelling case against federal jurisdiction than in *Henderson*. The tribal court in *Henderson* actually found it possessed tribal jurisdiction over the plaintiff's dispute with the school district, as it had in past cases. Yet the Tenth Circuit still found that the threat of the Navajo Nation's future assertion of jurisdiction over the school district did not meet the minimum requirements under Article III. Here, the Cherokee Nation District Court never found it had jurisdiction over the pharmacies and opioid distributors. Rather, the tribal court stayed tribal proceedings until this Court ruled on the preliminary injunction motion. Thus, the circumstances here compel dismissal even more than in *Henderson*.

dismissed following an initial screening by the Ute Court, no case or controversy exists on which to decide the action." *Id*.

Other courts have also found that federal lawsuits brought under *National Farmers Union* to enjoin tribal courts and/or dispute tribal jurisdiction are rendered moot by the dismissal of the underlying tribal cases. In *Moss v. Bossman*, 2009 WL 891867, at *6–7 (D. S.D. Mar. 31, 2009), the Yankton Sioux Tribe had filed a petition in tribal court against several non-Indian entities. The non-Indian entities responded by filing a complaint in federal court alleging the tribal court lacked jurisdiction, and seeking declaratory and injunctive relief. Two weeks later, the tribe voluntarily dismissed the tribal action, without prejudice. The federal plaintiffs still wished to proceed with the federal declaratory judgment action, much like the Plaintiffs here. They argued their claims for declaratory and injunctive relief were *not* mooted by the voluntary dismissal of the tribal court petition. Specifically, they reasoned that "because the petition was dismissed without prejudice, [the tribe] could file the same petition again in tribal court." *Id.* at *6. The *Bossman* court correctly rejected this argument, concluding that the non-Indian plaintiffs' claims for declaratory and injunctive relief were indeed moot. That the tribe "could file the same petition again in Tribal Court" was "mere speculation and not the basis for a claim." *Id.* at *7. Accordingly, the *Bossman* court granted the tribe's motion to dismiss the plaintiffs' claims for declaratory and injunctive relief, on the same grounds the Court should dismiss the Plaintiffs' complaint here.

Similarly, in *State of Nev. v. Hicks*, 944 F. Supp. 1455, 1460 (D. Nev. 1996), *aff'd sub nom. State v. Hicks*, 196 F.3d 1020 (9th Cir. 1999), *as amended* (Jan. 24, 2000), *rev'd and remanded on other grounds,* 533 U.S. 353 (2001), a member of the Fallon Paiute-Shoshone Tribe, Floyd Hicks, filed a complaint in tribal court against Nevada state officials who had damaged some of his property during a search of his home. The tribal court held it had jurisdiction over the action,

9

and the tribal appellate court affirmed the jurisdictional holding. Two weeks later, the State of Nevada and the state officials filed a declaratory judgment action in federal district court under *National Farmer's Union*, claiming tribal jurisdiction was invalid. But before the district court could rule on the parties' cross-motions for summary judgment on the disputed issue of tribal jurisdiction, the tribal court granted Mr. Hicks's motion to voluntarily dismiss the claims against the state officials in their official capacities. Over the objection of the state officials, the district court held that, because the tribal case against them was dismissed, their federal claims were rendered moot. In its order, the court specifically rejected the argument that the "voluntary cessation" doctrine applied, explaining that "[t]he mere fear of a possible future injury is insufficient to invoke the 'voluntary cessation' exception" and that "the state ha[d] made no showing of a reasonable expectation that the suit against the state defendants would be reinstated" in tribal court. *Id.* at n.3.

The same outcome occurred in *Tamiami Partners By & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Florida*, 898 F. Supp. 1549 (S.D. Fla. 1994), *aff'd in part, appeal dismissed in part*, 63 F.3d 1030 (11th Cir. 1995). There, a non-Indian entity filed an action in federal court against the Miccosukee tribe, seeking a declaration that the tribal court and its judges had exceeded their jurisdiction when the tribal court entertained a dispute between the parties. The federal court in *Tamiami* held that it lacked jurisdiction to grant declaratory or injunctive relief on the issue of tribal jurisdiction because the tribe had already voluntarily dismissed the tribal court lawsuit. *See id.* at 1559. The court held that the issue of the tribal court's jurisdiction had "been rendered moot by the termination of the tribal court proceedings, thereby requiring dismissal of this portion of the amended complaint under the 'case or controversies' requirement of Article III of the United States Constitution." *Id.*

**C.     The Court lacks subject matter jurisdiction because the Defendant is entitled to sovereign immunity.**

It is undisputed that the Cherokee Nation, including its officers and employees, is entitled to tribal sovereign immunity from suit in federal court. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). The only exception to the sovereign immunity bar is for the Plaintiffs to proceed under what courts have called the "*Ex Parte Young* fiction." *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 262 (1997) ("a request for prospective relief from an allegedly ongoing federal-law violation is ordinarily sufficient to invoke the *Young* fiction"); *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 267 (2011) (Roberts, dissenting) ("As we have often observed, *Ex parte Young* rests on the 'obvious fiction'"). The doctrine allows Plaintiffs to sue tribal officers for prospective equitable relief in certain narrow circumstances, and it is the Plaintiffs' burden to prove these circumstances exist.[4] If they cannot meet their burden, sovereign immunity bars suit against the tribe and its officers, and the case must be dismissed for lack of subject matter jurisdiction.

To meet the *Ex Parte Young* exception, the Plaintiffs must establish the Defendant is engaged in ongoing or continuing violation of federal law. This standard is similar to the "mootness" analysis, but in a sense even more stringent—in that, a claim for relief can be "non-moot" under Article III but still not involve an "ongoing violation" of federal law sufficient to invoke the *Ex Parte Young* exception to sovereign immunity. *See Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986) (holding that, even in a non-moot case, "when there is no continuing

---

[4] *Rosales v. Dutschke*, 2017 WL 3730500, at *3 (E.D. Cal. Aug. 30, 2017) ("Where, as here, defendants move to dismiss on the basis of tribal sovereign immunity, 'the party asserting subject matter jurisdiction has the burden of proving its existence, i.e., that immunity does not bar the suit.'") (quoting *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015)); *City of New York v. Golden Feather Smoke Shop, Inc.*, 2009 WL 705815, at *3 (E.D.N.Y. Mar. 16, 2009) (same) (citing *Garcia v. Akwesana Hous. Auth.,* 268 F.3d 76, 84 (2d Cir. 2001)).

conduct that states must change to comply with federal law—the reason for the rule of *Young* no longer applies. When the reason no longer applies, neither does the rule").

A court "need only conduct a straightforward inquiry into whether complaint alleges an *ongoing* violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Com'n of Maryland*, 535 U.S. 635, 645 (2002) (emphasis added, internal quotes and alteration omitted). The Supreme Court has said that: "*Young* has been focused on cases in which a violation of federal law by a state official *is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past*, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence…." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (emphasis added). In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a *continuing violation* of federal law." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (emphasis added, citation omitted). *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) ("*Ex parte Young* thus speaks of enjoining state officers *who threaten and are about to commence proceedings*, and we have recognized in a related context that a conjectural injury cannot warrant equitable relief. Any other rule (assuming it would meet Article III case-or-controversy requirements) would require federal courts to determine the constitutionality of state laws in hypothetical situations where it is not even clear the State itself would consider its law applicable.") (citations and quotations omitted).

Thus, even if the Court found that Plaintiffs' lawsuit were not "moot" from a justiciability perspective, nor from a prudential perspective, the Court should find it is barred by sovereign

immunity. The Plaintiffs have not alleged an ongoing or immediately impending federal-law violation on the part of General Hembree. Nor could the Plaintiffs make such an allegation. The tribal court lawsuit is over, and it will not be resumed. *See* Hembree Dec. at ¶¶ 7-8. If the federal lawsuit were allowed to proceed in these circumstances, it would unnecessarily place another layer of "fiction" on the *Ex Parte Young* exception—specifically, the additional fiction that adjudicating whether General Hembree acted beyond federal law last April when he filed a tribal-court lawsuit (which has been stayed since last July, and is no longer pending) would somehow constitute "prospective" relief. It would not. In reality, if the suit against General Hembree continued in federal court, it would be an academic exercise about whether a prior lawsuit arguably fell within the tribal court's jurisdiction. While the Plaintiffs may hope that by continuing with the federal litigation, the Court may grant some relief that will serve as a "deterrent" to the Cherokee Nation (or other tribes) from suing the Plaintiffs (or other major corporations) in tribal court in future hypothetical cases, that is precisely what isn't allowed. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). General Hembree is immune from such a suit concerning past conduct.

Because the Plaintiffs cannot meet their burden to show that their federal lawsuit against officials of the Cherokee Nation acting in their official capacities falls into an exception to tribal sovereign immunity, the case must be dismissed.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' federal complaint is non-justiciable under Article III and barred by tribal sovereign immunity. The Court should grant this motion to dismiss.

Respectfully submitted,

*/s/ Tyler Ulrich*
Tyler Ulrich
Stephen N. Zack
Patricia A. Melville

BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
szack@bsfllp.com
tulrich@bsfllp.com
pmelville@bsfllp.com
Tel: (305) 539-8400
Fax: (305) 539-1307

William S. Ohlemeyer
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
wohlemeyer@bsfllp.com
Tel: (914) 749-8440
Fax: (914) 749-8300

Lloyd B. Miller
Donald J. Simon
Frank S. Holleman
Rebecca A. Patterson
SONOSKY, CHAMBERS, SACHSE,
ENDRESON & PERRY, LLP
1425 K Street NW, Suite 600
Washington, DC 20005
lloyd@sonosky.net
dsimon@sonosky.com
fholleman@sonosky.com
rebecca@sonosky.net
Tel.: (202) 682-0240
Fax: (202) 682-0249

M. Todd Hembree
Attorney General
Chrissi Ross Nimmo
John Young
Chad Harsha
Assistant Attorneys General
THE CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74464
chrissi-nimmo@cherokee.org
john-young@cherokee.org
chad-harsha@cherokee.org
Tel: (918) 453-5000
Fax: (918) 458-5099

14

Richard Fields
FIELDS LAW PLLC
2000 Massachusetts Avenue
Washington, DC 20036
fields@fieldslawpllc.com
Tel: (917) 297-3610
Fax: (202) 772-3333

Curtis "Muskrat" Bruehl
THE BRUEHL FIRM
3216 NW 177th Street
Edmond, OK 73012
cbruehl@bruehllaw.com
Tel.: (405) 509-6300
Fax: (405) 300-1140

ATTORNEYS FOR DEFENDANT
ATTORNEY GENERAL TODD HEMBREE

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2018, I electronically transmitted the foregoing document to the Clerk of the Court using ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Stuart Paul Ashworth | Larry D. Ottaway |
| Stuart Douglas Campbell | James John Proszek |
| Jane Reed Cowdery | Ryan A. Ray |
| Don William Danz | Richard Schirtzer |
| Alvin L. Emch | G. Calvin Sharpe |
| Steven Ernest Holden | Amy Sherry-Fischer |
| Joey Dean Horton | Amy Durrell White |
| Susan E. Huntsman | Joel L. Wohlgemuth |
| Kaylee Patricia Davis-Maddy | Frank Lane Heard |
| Claire E. Castles | Steven M. Pyser |
| Karen P. Hewitt | Matthew Michael Benov |
| James Russell Wooley | Russell David Jessee |
| Meredith S. Auten | Laura Jane Durfee |
| Ann Lauren Carpenter | Steven R. Hickman |
| Thomas F. Gede | Robert A. Nicholas |
| D. Michael McBride, III | |

And I hereby certify that on February 8, 2018, I served the foregoing document by email on the following, who are not registered participants of the ECF program:

Geoffrey Hobart
Covington & Burling LLP
850 TENTH ST NW
WASHINGTON, DC 20001
ghobart@cov.com

Enu Mainigi
Williams & Connolly
725 TWELFTH ST NW
WASHINGTON, DC 20005
emainigi@wc.com

/s/ Tyler Ulrich
Tyler Ulrich

154959-1